## GORMAN v HEUCK

Ohio Appeals, 1st Dist, Hamilton Co

Decided November 2, 1931

Robert N. Gorman, Pros Att'y, and Richard T. Dickerson, Cincinnati, for plaintiff.

Taft, Stettinius & Hollister, Cincinnati, Special Pros Att'y, for defendant.

**ROSS, PJ.**

As to the treasurer, there is evidence that the installation of the systems recommended will produce a joint net saving in the offices of the auditor and treasurer in the sum of $88,000 the first year, of which $15,000 is in the office of the treasurer.

There can be no doubt that the services would be, and have already been, of great value to the officers involved. This is not seriously disputed. The sole question presented, however, is, Under what enabling provision of the statutes can expenditures out of public funds for such services be justified in law?

**Article X, §5, of the Ohio Constitution,** provides: "No money shall be drawn from any county or township treasury, except by authority of law."

If, then, there be no statutory authority permitting such expenditures out of public funds, all that is contended and introduced in evidence can be but strong impelling matter for the consideration of the Legislature, but unavailing to a court limited to approval of drafts upon the treasury authorized by the statute laws of this state.

It is conceded that the statutes nowhere authorize a contract for an advisory report, but it is claimed that the power to secure advice and suggestions from others than deputies or employees, and to cause the public to pay for same, is inherent in the officers, and implied from and incident to the powers conferred upon them by law. As we apply this contention to the question presented, it means that the officers, having admitted that they have not the required technical knowledge to efficiently and economically administer the offices to which they have been elected, have the inherent or implied power to secure the necessary expert advice from outside sources, and cause the consideration for such advice and suggestions to be paid for out of public funds.

The Legislature has seen fit in other similar matters to pass specific enabling acts, which would seem to be unnecessary if such wide power lies inherently in these officers and is incidental to their granted powers.

**Sec. 2412 GC,** gives the county commisioners power to employ legal counsel for an office when expert legal advice is required.

**Sec 2410 GC,** gives them power to employ superintendents, watchmen, janitors, and other employees deemed necessary for the care and custody of county property under their control.

It was thought necessary to pass an act to empower the county commissioners to purchase motor vehicles. **§2412-1 GC.**

**Sec 2471 GC** gives the commissioners the power to employ a special surveyor. And **§2494 GC,** authorizes them to allow and pay for experts and expert witnesses necessary in the prosecution of criminals.

It would seem that these special enabling acts would be unnecessary if the commissioners had the general implied powers suggested.

**Sec 2419 GC,** a section relied upon somewhat to support the claimed powers of the comissioners in the instant case, reads as follows: "A court house, jail, public comfort station, offices for county officers and an infirmary shall be provided by the commissioners when in their judgment they or any of them are needed. Such buildings

and offices shall be of such style, dimensions and expense as the commissioners determine. They shall also provide all the equipment, stationery and postage, as the county commissioners may deem necessary for the proper and convenient conduct of such offices, **and such facilities as will result in expeditious and economical administration of the said county offices.** They shall provide all rooms, fire and burglar-proof vaults and safes and other means of security in the office of the county treasurer, necessary for the protection of public moneys and property therein."

The words in black face are claimed to be sufficiently broad in meaning to authorize the contracts. As amended, this section constituted House Bill No. 524, which in **108 Ohio Laws, Part 1, p. 387,** appears as "An Act to amend §2419 of the General Code, authorizing the county commissioners to expend funds for the **establishment, equipment and maintenance of public offices.**"

The word "facilities" is used in its ordinary meaning, has no peculiar or special meaning, and is to be taken as related to the other subject-matter of the act—equipment, supplies, buildings, and offices.

The intent of the Legislature was to authorize the county commissioners to provide such physical aids and help as might assist the officers in efficiently conducting their offices; that they should be furnished with suitable space, proper equipment, necessary supplies; but that they should be also furnished with expert advice, by outside contracting specialists, cannot be injected within the connotation of the word "facilities," even when giving it a broad meaning. The statute evidently refers to the offices and equipment; not to assistance to the officers themselves.

Especially are we assured of our position in this matter, as full authority is given all officers to employ clerks and deputies to aid and assist them, and it is reasonable to suppose that, if they themselves do not possess the technical knowledge necessary to economically and efficiently administer their duties, they will secure among such employees and deputies technical experts, with sufficient ability to furnish the required advice and suggestions. Such consideration must have been before the Legislature.

A section relied upon as empowering the auditor to enter into the contracts with the bureau is §5548 GC. This section provides, among other things, that: "The county auditor upon the approval of the tax commission of Ohio, is empowered to appoint and employ such experts, deputies and clerks, or other employees, as he may deem necessary to the performance of such duties as such assessor. * * *"

This section refers to the duties of the county auditor in the assessment of real estate, and the reappraisal thereof. The evidence shows that the tax commission of Ohio approved the appointment only of such experts as should be deputized by the auditor. As the bureau was a corporation, it could not be, and was not, deputized, and hence there was not such compliance with this section of the General Code as would authorize the contracts with the bureau upon the premise that it was an expert capable of employment.

Many other sections of the General Code are called to our attention, but in none of these is there direct or implied authority for the use of public funds for the purposes contemplated in the contracts under consideration; nor are we able to find any authority in the statute laws of this state giving express authority for the proposed expenditures, or authority to perform any duty to which is attached as a necessary incidental requirement or implied privilege the right to expend public funds for personal expert advice as to how to conduct such offices, even though such advice is used for the benefit of the public.

It is obvious that there can be no reflection of any kind upon a county officer because he does not happen to be a technical expert, completely capable of dealing with the manifold and intricate duties now incident to the proper, efficient, and economical administration of his office. However, it is just as manifest that the absence of such experience and technical knowledge cannot of itself, and exclusive of legislative authority, furnish the basis for authority for an implied power to draw upon public funds for the purpose of paying for advice which will permit such officer to efficiently perform his duties.

The prayer of the petition to enjoin the county auditor from honoring or allowing vouchers based upon services rendered under the contracts in question, or from causing the same to be paid out of public funds, is granted.

A decree may be presented accordingly.

Decree accordingly.

HAMILTON and CUSHING, JJ, concur.