## GLENDALE SAVINGS ASSN v SANDER et

Ohio Common Pleas, Hamilton Co

Decided Aug 12, 1937

T. Gordon Gutting, Cincinnati, for plaintiff.

Carl W. Rich, Cincinnati, for Sander and Burch.

Herbert S. Duffy, Attorney General, Columbus, Henderson Estes, Columbus, and Earl T. Wagner, Columbus, Assts. Attorney General, for Superintendent of Building and Loan Associations.

## OPINION

By ALFRED MACK, J.

Plaintiff, a building and loan association of this state, entered into an agreement with defendants Sander and Burch to pay them two per cent of the face amount of loans which they might obtain for plaintiff, to be made to borrowers on first mortgages on real estate, such borrowers in all respects meeting all the requirements of plaintiff company in making such loans. Under such agreement Sander and Burch brought to plaintiff one Schulte and wife, who therupon made application to plaintiff for a loan of seven thousand ($7,000) dollars on certain real estate in Hamilton County, Ohio. Having found the borowers and security in all respects ample and proper such loan was completed Thereupon the superintendent of building and loan associations of the State of Ohio advised plaintiff that the payment of such commission was illegal and the Department of Commerce would take action under §9846-6, GC, in event such commission is

paid. Plaintiff prays a declaratory judgment as to whether the payment of said commission is valid, legal and binding, and whether it may pay said commission of $140 under said contract for services in connection with said Schulte loan.

Defendants Sander and Burch filed an answer praying that their contract be declared valid, legal and binding and that said amount of $140 is legally due them.

Very properly the superintendent of building and loan associations of the state of Ohio was made a party herein and filed his answer admitting his advice to plaintiff and alleging the invalidity of said contract and his reasons for his actions. Substantially, the following allegations set forth the position of said officer, viz:

"Defendant says that to allow building and loan associations to pay commissions for the obtaining of loans is not to the best interests of the institutions and is detrimental to the interests of depositors and shareholders of said institutions, as the money used to pay said commissions should be paid to the shareholders as dividends and profits. That to allow building and loan institutions to pay commission for obtaining loans creates a competitive market in the making of loans, and in the end is expensive to the institution and to the shareholders. That it was in the exercise of his discretion as superintendent of building and loan associations and for the protection of the assets of the institutions that he issued the communication above mentioned.

"That the payment of commission for the obtaining of loans for building and loan associations is illegal."

At the hearing, the evidence showed the contract in question was duly authorized and that the Schulte loan was made upon proper investigation and upon examination of title. Defendant, superintendent of building and loan associations of Ohio, detailed his experience and his observation as to loans brought to such associations by brokers and insisted he was vested with power and discretion as to prohibiting the payment of commissions under circumstances as in the instant case. He stated substantially one-third of all the building and loan associations of Ohio are located in Hamilton County, and that none of such associations were closed notwithstanding the depression that followed the closing of banks. However, he stated that the closing of some other such associations in

other parts of this state was caused, in his opinion, by improper loans made at the instance of brokers who secured the same for such associations.

**Article XIII, §2 of the Constitution** of this state provides that:

"Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed. Corporations may be classified and there may be conferred upon proper boards, commissions or officers, such **supervisory and regulatory powers** over their organization, **business** and issue and sale of stocks and securities * * * as may be prescribed by law."

**State ex v Savings Co., 110 Oh St 320,** has been cited by counsel for the superintendent of building and loan associations. That case clearly and emphatically held that a contract by a building and loan association, made prior to the amendment of §9645, GC, (110 Ohio Laws, at 67) providing for the payment of a fee or commission for the selling of stock of such association, was not prohibited, but that after the effective date of such act no such payment could be made on sales after such effective date although the contract was made before such effective date. At such amended act, §9645, GC, expressly provided "no commission or fee shall be paid to any person, association or corporation for selling such stock," the court said, per Jones, J., at page 327:

"Therefore it is manifest that, while the petition attacks the contract entered into prior to the effective date of the amended act, and asks the judgment of ouster from further proceeding under that contract, it is not sought to impair a completed contractual obligation, but to curtail a subsequent exercise of a franchise by preventing future sales. Undoubtedly this association itself could not enter into such a contract after July 2, 1923, and, in our opinion, it cannot foreclose the right of the state to exercise thereafter its police power by entering into such contract prior to the date of the amended act."

In our opinion this decision clearly recognizes the rule that acts not expressly prohibited by law or by public policy can be performed by officers of a corporation if in their conduct of the affairs of a corporation they in good faith believe such acts for the benefit of the corporation.

As to the powers and authority of public officers **Gorman v Heuck, 41 Oh Ap 453, (11 Abs 554)** is an instance of the application of the rule that such officers have only such powers as are expressly delegated to them by statute and such as are necessarily implied from those so delegated. In that case the county auditor was held to have no power to contract for services resulting in great economy in the administration of his office because such power was neither expressly conferred or necessarily implied from power conferred. At page 461, Judge Ross said:

"It is obvious that there can be no reflection of any kind upon a county officer because he does not happen to be a technical expert, completely capable of dealing with the manifold and intricate duties now incident to the proper, efficient, and economical administration of his office. However, it is just as manifest that the absence of such experience and technical knowledge cannot of itself, and exclusive of legislative authority, furnish the basis for authority for an implied power to draw upon public funds for the purpose of paying for advice which will permit such officer to efficiently perform his duties."

We have carefully examined all of the provisions of the General Code with reference to the powers and duties of the superintendent of building and loan associations and are unable to find any provision whatever which gives him the discretion and power to substitute his judgment and experience for that of the elected officers of a building and loan association in reference to what expense (not resulting in insolvency or impairment of capital) shall be incurred in the conduct of its affairs. Necessarily, it seems to us that such matters must be governed by the good faith and judgment of the board of directors chosen by the members of such association.

This is obvious from many provisions of the law with reference to such associations. For instance, on foreclosure of a mortgage the board of directors alone are the ones to judge whether to buy in the real estate or not, and to determine the price at which they would approve a sale to a buyer at a loss of part of the amount due the association. Such associations may borrow money under §9656, GC; invest idle funds under §9660, GC; deposit idle funds under §9661, GC. None of such powers require the consent of the superintendent of building and loan associations.

Certain powers are conferred which by express provision of the law are subject to the authority or consent of such superintendent. For example, taking title to certain real estate under §9655, GC; purchasing shares in Federal Savings and Loan Association under §9660-3, GC; selling interest bearing obligations secured by real estate mortgage under §9662, GC.

It should be noted that §9668, GC, expressly confers on such associations broad powers in this language "to have all such other powers as are necessary and proper to enable such corporation to carry out the purpose of its organization."

That such powers were intended to be broad is evident from the phrase in §9655, GC, stating that the powers conferred in said section shall be "without prejudice to the generality of the powers conferred by §9668, GC."

In our opinion determination of instant case should be influenced by §§9646-4, GC, which became effective June 29, 1934. This was passed at a special session of the legislature called by the Governor in order to amend and enact supplemental legislation in view of the strain on such associations as the result of the years of depression and consequent business decline, and to permit them to secure funds through federalization and insure all deposits and shares by reorganization, etc. Such new provision of law reads as follows:

"No director, officer, employee or attorney of an association shall, directly or indirectly, stipulate for, or agree or assent to receive, or receive, any money or other thing of value as a fee, commission, or gift from any person or corporation other than the association making the loan, for procuring, or for endeavoring to procure, for such person or corporation, or for performing any service, (except reasonable attorneys' fees for services) in connection with any loan from, or any investment by such association."

By its plain and express terms the prohibition is against a director, officer, employee or attorney of the association receiving anything of value as a fee or gift from any one **"other than the association making the loan,"** for any service in connection

with such loan except reasonable attorneys' fees.

Necessarily, this, in our opinion, assumes that expenses **paid or incurred** by such association in securing such loan are in no respect either malum prohibitum or in no sense improper.

It is general knowledge, of which we must take judicial notice, that since "the recovery," following "the depression," has set in banks, insurance companies and the Federal Home Loan Corporation, through advertisements and solicitors are actively attempting to secure investments of their funds in first mortgages on desirable real estate at what is now regarded as uninflated values. To prohibit associations like plaintiff using similar means to secure like desirable mortgages, when the amount loaned and the character of the borrower are such as are approved by the board of directors, would almost necessarily put them out of business in centers like Hamilton County and the other populous counties of this state.

Secs 676 to 695, GC, inclusive, relate to the powers and duties of the superintendent of building and loan associations. §676 GC defines his duties to "see that the laws relating to building and loan associations are properly executed and enforced." Plainly, this is a grant of supervisory or regulatory and not directory duties except as specific sections of the ▮▮▮▮▮▮ General Code confer on him the latter class of duties. Most of the following sections relate to his taking possession of the business and property of a building and loan association found to be in "an unsound or unsafe condition," or "that it is conducting its business in whole or in substantial part contrary to law," etc.

Sec 676, GC, is similar in its language to the provisions regulating the duties of the superintendent of insurance under §617, GC, etc.

Building and loan associations, banks, insurance companies, and perhaps other corporations are placed under the supervision of a superintendent of a department relating to such business. Save and except provisions expressly prescribing the conduct of such companies in relation to certain matters and provisions expressly prohibiting certain actions by them, the provisions mostly relate to examination by the superintendent of such departments for the purpose of seeing that such companies are conducted according to law and are not unsafe and unsound. The duties of such superintendents are for the benefit of the public and the stockholders of such company, supervisory in character, and there has not been any attempt on the part of the Legislature to substitute the judgment and discretion of the superintendent of such department for the judgment of the directors of such companies in the regular conduct of business and the employment of necessary agents, or incurring of necessary expense in securing business and promoting the best intersts of such companies.

Mainly, the argument of the learned assistant attorney general assumes that a building and loan association in the absence of an **express** provision conferring power to incur expense in securing business does not possess such power. In our opinion we have already pointed out the answer to such assumption. He refers to the act approved May 10, 1937, amending §9672, GC. The only purpose served by said amendment was to permit a building association which acquired real estate to charge the cost of reconditioning such property either to its reserve fund or current operating expense and upon sale of such real estate to apply the payment to restoration of losses previously charged to reserve, or to current incomes, as determined by the board of directors.

The amended §9672 GC retained the provision theretofore in the law:

"All expenses of such association shall be paid out of the gross earnings only and so much of the earnings as may be necessary must be set aside each year for such purpose."

This is thoroughly in line with the view we have taken in instant case, viz: that expenses in securing business ▮▮▮▮▮ are within the control of the board of directors of such association and that necessarily such expenses must be paid out of earnings.

And so concluding that our laws neither expressly or necessarily give to the superintendent of building and loan associations in his discretion, however well founded he may judge said course to be, authority to prescribe what reasonable expense a building and loan association may incur in securing desirable loans, it is our judgment and order that the contract in question be declared and adjudged valid and binding and that defendants Sander and Burch are entitled to said commission of $140 upon the Schulte loan.